## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RAUL RODRIGUEZ,
|                     Appellant,

v.

OFFICE OF PERSONNEL
|    MANAGEMENT,
|                     Agency.

DOCKET NUMBER
DA-0845-19-0284-I-1

DATE: July 16, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Alfredo Morales</u>, Esquire, McAllen, Texas, for the appellant.

<u>Carla Robinson</u>, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained the final decision of the Office of Personnel Management (OPM) regarding a Federal Employees' Retirement System (FERS) annuity overpayment. Generally, we grant petitions such as this one only in the following

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

On December 31, 2014, the appellant retired from the Department of Homeland Security under FERS. Initial Appeal File (IAF), Tab 8 at 40. In his retirement application, the appellant indicated that he was unmarried and had no former living spouse. *Id.* at 36. He elected an unreduced annuity payable only during his lifetime and commencing January 1, 2015. *Id.* at 20, 36. However, at the time of his retirement, the appellant was involved in litigation with a woman claiming to be his common law wife and suing for divorce. IAF, Tab 1 at 4; Hearing Compact Disc (HCD) at 31:20 (testimony of the appellant).

On May 14, 2015, a jury in the District Court of El Paso County, Texas issued a verdict finding that the appellant had entered into common law marriage as of July 6, 1996. IAF, Tab 8 at 22-23. On September 25, 2015, the court issued a divorce decree, effective August 20, 2015, which included a division of marital property. *Id.* at 22-30. As relevant here, the court ordered that the appellant's former spouse be awarded an interest in his FERS basic annuity, as well as a

former spouse survivor annuity "as more particularly set forth in the Qualifying Retirement Benefits Order filed with the Court contemporaneously with this decree." *Id.* at 26. That order, captioned "Order Dividing Federal Employees' Retirement System Benefits," was issued in compliance with the requirements of 5 C.F.R. part 838, subpart C. *Id.* at 31-33. The order specified that the appellant's former spouse was to receive 31.265% of the appellant's gross monthly annuity, commencing September 1, 2015, as well as a former spouse survivor annuity in the maximum amount. *Id.* at 32.

On April 29, 2017, OPM issued the appellant a notice stating that, effective June 1, 2017, it would begin directly paying the appellant's former spouse the 31.265% of his basic annuity, as contemplated in the court order, and that the appellant's former spouse was due a retroactive apportionment payment of $5,912.80, which OPM would recover by withholding $125 per month from the appellant's annuity. *Id.* at 21. It does not appear that the appellant contested this action.[2] OPM's letter also acknowledged the court-ordered survivor annuity, but there was no mention of any deductions or overpayments that would be assessed against the appellant's basic annuity to pay for it. *Id.*

Subsequently, on March 12, 2018, OPM issued the appellant another notice, this time stating that it had determined that his former spouse was eligible for maximum survivor benefits effective January 1, 2015, and that adding the cost of the survivor benefits retroactive to that date had caused an overpayment of $15,406. *Id.* at 15. OPM proposed to collect the overpayment by withholding 36 monthly installments of $427.94 from the appellant's annuity, with a final installment of $0.16. *Id.* The appellant requested reconsideration. *Id.* at 8-14. On March 13, 2019, OPM issued a reconsideration decision affirming the existence of the overpayment and the collection schedule. *Id.* at 5-7.

---

[2] At this point, evidence concerning the former spouse's share of the basic annuity, the retroactive apportionment payment, and the $125 monthly withholding vanishes from the record. It is not clear what ever became of this matter, but it is not at issue in the instant appeal, and we find that it is ultimately immaterial to the outcome.

The appellant filed the instant Board appeal, challenging the existence of the overpayment and requesting a waiver. IAF, Tab 1. After a telephonic hearing, the administrative judge issued an initial decision, affirming the existence of the overpayment and denying the appellant's request for waiver, but adjusting the collection schedule to $300 per month. IAF, Tab 17, Initial Decision (ID).

The appellant has filed a petition for review, contesting the existence of the overpayment, requesting waiver of collection, and alleging bias by the administrative judge. Petition for Review (PFR) File, Tab 1. OPM has filed a response. PFR File, Tab 3.

## ANALYSIS

OPM has proven the existence and the amount of the overpayment.

OPM bears the burden of proving the existence and amount of an annuity overpayment by preponderant evidence. *Vojas v. Office of Personnel Management*, 115 M.S.P.R. 502, ¶ 10 (2011); *see* 5 C.F.R. § 845.307(a). In this case, the administrative judge found that, according to the court order, the appellant's former spouse was entitled to a maximum survivor annuity, and that a maximum survivor annuity entails a 10% reduction in the basic annuity. ID at 2, 5. She further found that OPM provided sufficient evidence to prove the mathematical accuracy of the stated overpayment amount. ID at 5.

On petition for review, the appellant renews his argument that OPM should not have honored the court order because he had elected no survivor annuity at the time of his retirement, and that his election controls over the court order. PFR File, Tab 1 at 6-8. We disagree. Under FERS, an employee who was married at the time of retirement will receive a fully reduced annuity in order to provide an annuity for his current spouse unless the employee and his spouse jointly waive the survivor annuity in writing.[3] 5 U.S.C. § 8416(a)(1); 5 C.F.R.

---

[3] The amount of such a reduction is 10% of the retiree's annuity. 5 U.S.C. § 8419(a)(1); 5 C.F.R. § 842.603(c).

§ 842.603(a). Because the appellant was, in fact, married at the time of his retirement, it would appear that his election of an unreduced annuity was invalid for lack of spousal consent and waiver.

However, as the appellant points out, there is an exception to the general rule requiring spousal consent and waiver if the employee establishes to OPM's satisfaction that his spouse's whereabouts cannot be determined, or "that, due to exceptional circumstances, requiring the employee . . . to seek the spouse's consent would otherwise be inappropriate." 5 U.S.C. § 8416(a)(2). The appellant asserts that his case "falls squarely" under the latter category because he alerted the OPM official preparing his retirement documents of the pending divorce proceedings, and the official allowed him to elect an unreduced annuity anyway.[4] PFR File, Tab 1 at 6-7. We disagree. The existence of such "exceptional circumstances" must, under 5 C.F.R. § 842.607(b), be established by a judicial determination, and the appellant has presented no such judicial determination to the Board.

Because the appellant elected an unreduced annuity without obtaining a written waiver from his then-current spouse, and the statutory waiver exception does not apply, we find that his initial election was invalid. Because the waiver exception does not apply, we do not reach the appellant's argument that the waiver exception operates under 5 U.S.C. § 8445(e) to make the court order ineffective. PFR File, Tab 1 at 7-8. We find that the court order is valid and enforceable against the appellant retroactive to the date of his retirement, and that the appellant's receipt of an unreduced annuity from January 2015 through February 2018 resulted in an overpayment.

---

[4] Given the unusual circumstances in this case, it is not clear to us that the advice from this OPM official was wrong. We are unaware of any established protocol for handling annuity elections during the pendency of litigation concerning the existence of a current marriage. Because annuity election options are contingent on marital status, any option that the appellant might have selected would have been potentially invalid, depending on the outcome of the litigation.

Regarding the amount of the overpayment, the appellant does not directly challenge the administrative judge's finding that OPM's calculation of the overpayment amount was correct, and we find that her conclusion is supported by the record. ID at 5. During the 38-month period in question, the appellant received a gross monthly annuity of $4,036 for 23 months, $4,048 for 12 months, and $4,128 for 3 months, for a total of $153,788 (($4,036 × 23) + ($4,048 × 12) + ($4,128 × 3)). IAF, Tab 8 at 20. Had the appellant been receiving a fully reduced annuity to pay for the survivor annuity, he would have received $3,632 for 23 months, $3,642 for 12 months, and $3,714 for 3 months, for a total of $138,382 (($3,632 × 23) + ($3,642 × 12) + ($3,714 × 3)). *Id.* at 19. The difference between these two figures is OPM's claimed overpayment amount of $15,406 ($153,788 – $138,382). *Id.* at 5.

For these reasons, we agree with the administrative judge that OPM proved the existence and amount of the overpayment by preponderant evidence.

The appellant has not established his right to a waiver.

Recovery of an overpayment may not be made from an individual when, in the judgment of the OPM, the individual is without fault and recovery would be against equity and good conscience. 5 U.S.C. § 8470(b); 5 C.F.R. § 845.301.[5] The pertinent considerations in finding fault are as follows: (1) whether payment resulted from the individual's incorrect, but not necessarily fraudulent, statement, which he should have known to be incorrect; (2) whether payment resulted from the individual's failure to disclose material facts in his possession which he should have known to be material; or (3) whether he accepted a payment which he knew or should have known to be erroneous. *Maseuli v. Office of Personnel Management*, 111 M.S.P.R. 439, ¶ 7 (2009); 5 C.F.R. § 845.302(a). The

---

[5] The regulatory standards for waiver of overpayments under FERS are substantially similar, and indeed almost identical, to those under the Civil Service Retirement System (CSRS). *Compare* 5 C.F.R. part 831, subpart N, *with* 5 C.F.R. part 845, subpart C. We find the case law interpreting the CSRS regulations to be instructive in interpreting the FERS regulations.

appellant bears the burden of establishing his entitlement to a waiver by substantial evidence.  5 C.F.R. §§ 845.307(b), 1201.56(b)(2)(ii).

In this case, the administrative judge found that the appellant was at least partly at fault for creating the overpayment because he neglected to inform OPM of the court order, and he failed to question the correctness of his annuity payments, which did not reflect a 10% reduction.  ID at 6-8.  On petition for review, the appellant argues that OPM was at fault for creating the overpayment because it failed to notify him of his annuity election rights post-divorce so that he could elect an unreduced annuity.  PFR File, Tab 1 at 10-12.  Like the administrative judge, we are unpersuaded by this argument.  ID at 7-8.  The law makes no provision for an annuitant to unilaterally cancel a court-ordered survivor annuity.

Applying the considerations of 5 C.F.R. § 845.302(a) to the facts of this appeal, we find that the appellant was not without fault in causing the overpayment.  First, we find that the overpayment resulted from incorrect information that the appellant supplied on his retirement application, i.e., that he was unmarried at the time of his retirement.  IAF, Tab 8 at 36; *see Uresti v. Office of Personnel Management*, 108 M.S.P.R. 262, ¶ 9 (2008) (finding that the appellant was not without fault in creating an overpayment which was caused by inaccurate information that he provided on his retirement application).  We find that this statement was not fraudulent to the extent that the appellant genuinely believed that he was unmarried and had not yet received a judicial determination stating otherwise.  Furthermore, there are mitigating circumstances involved because the appellant discussed the pending state district court proceedings with an OPM official, who allowed him to select an unreduced annuity regardless.  HCD at 4:55 (testimony of the appellant).  Nevertheless, the information that the appellant supplied on his retirement application was still incorrect, and although it was not fraudulent in nature, it remains a relevant consideration in the overall analysis.  *See* 5 C.F.R. § 845.302(a)(1).

Second, we find that the overpayment, at least initially, resulted from the appellant's failure to disclose material facts to OPM, i.e., the court order directing the payment of a survivor annuity. *See Plewinski v. Office of Personnel Management*, 44 M.S.P.R. 20, 22-23 (1990) (finding that the appellant was not without fault in causing an overpayment because she failed to inform OPM promptly of her remarriage, a material fact affecting her entitlement to a survivor annuity). The record does not reflect the date that OPM actually received the court order at issue. OPM has not provided any such evidence, and the appellant testified that he had no information on the matter, although he supposed that either his or his former spouse's attorney must have submitted the order to OPM at some point. HCD at 29:50 (testimony of the appellant). What is clear is that somebody submitted the order to OPM at least by April 29, 2017, the date that OPM first notified the appellant that it had processed the order.[6] IAF, Tab 8 at 21. We find that the appellant knew or should have known that the court's decree was material information, and that it was incumbent upon him to notify OPM of the fact of his common law marriage, subsequent divorce, and court-ordered survivor annuity promptly after he received the court's order, on or about September 25, 2015.[7] *Id.* at 22-30. Nevertheless, we agree with the

---

[6] On petition for review, the appellant asserts that "OPM was aware of the court order as of late 2015," citing "documents on file with the [administrative judge]." PFR File, Tab 1 at 10. The appellant's generic citation to the entire record does not approach the degree of specificity required by the Board's regulations. *See* 5 C.F.R. § 1201.114(b) (stating that a petition for review "must be supported by specific references to the record). Our review of the record has uncovered no indication that OPM was aware of the court order prior to April 2017. To the extent that the appellant believes that the record contains a particular piece of evidence showing something different, he has failed to provide us with sufficient information to locate that evidence. In any event, even if OPM were aware of the court order in late 2015, we would still find that the appellant was partly at fault for the overpayment.

[7] Our finding is supported by the appellant's testimony that he discussed the pending district court proceedings with an OPM official at the time of his retirement. HCD at 4:55 (testimony of the appellant). This testimony tends to show that the appellant knew that his marital status was material to the annuity election issue because otherwise he would not have brought it up.

appellant that OPM's mishandling of his case from April 29, 2017 onward contributed to the overpayment problem. PFR File, Tab 1 at 9-10. OPM was clearly in possession of the court order on this date, yet it waited an additional 11 months before taking any action to reduce the appellant's annuity. *Id*. at 17. OPM has provided no explanation for this delay, which we find was unwarranted and directly contributed to the overpayment. However, as discussed below, even after this time the appellant remained at least partly at fault for the overpayment's continued accrual.

Third, we find that the appellant accepted payments that he knew or should have known to be erroneous. *See Dela Casa v. Office of Personnel Management*, 60 M.S.P.R. 287, 291-92 (1994) (finding that the appellant was not without fault in causing the overpayment because she accepted payments that she knew or should have known to be in error). The appellant was twice notified, in his initial retirement application and in OPM's April 29, 2017 letter, that the survivor annuity would result in a reduction in his basic annuity, yet he took no action to rectify the matter when he continued to receive an unreduced annuity. IAF, Tab 8 at 21, 36. We agree with the administrative judge that the appellant knew or should have known that he was receiving too much annuity during this time, and that he was therefore partly responsible for the overpayment. ID at 7.

Conceptually, the 38-month overpayment window can be divided into three time periods. The first period, from January through September 2015, predates the divorce decree and survivor annuity order. The second period, from October 2015 through April 2017, covers the time between the issuance of the court order and the earliest date on record that OPM had received it. The third period, from May 2017 through February 2018, covers the period between OPM's processing of the order and the beginning of the survivor annuity reductions. The appellant was more or less at fault for the overpayment that accrued during each of these periods. The overpayment during the first period was the result of the appellant's invalid annuity election based on incorrect information that he

supplied on his retirement application. Although the appellant may not have known for certain at the time that this information was incorrect, he had reason to believe that subsequent events might prove otherwise. During the second period, the appellant's responsibility for the overpayment was compounded by his failure to notify OPM of the results of the divorce proceedings and his continued receipt of an unreduced annuity, which he knew or should have known was incorrect. During the third period, OPM itself incurs some fault for failing to begin annuity reductions promptly upon its processing of the order, but the appellant is not entirely relieved of his responsibility during this period because he continued to receive an unreduced annuity, which he knew or should have known was incorrect, without attempting to rectify the matter.

Because the appellant failed to show by substantial evidence that he was without fault in causing the overpayment, we have not considered his argument that recovery would be against equity and good conscience. PFR File, Tab 1 at 9-12; *see Gott v. Office of Personnel Management*, 97 M.S.P.R. 538, ¶ 8 (2004); *Conway v. Office of Personnel Management*, 56 M.S.P.R. 82, 85-86 (1992).

<u>The appellant has not shown that the administrative judge was biased.</u>

A party claiming bias or prejudgment by an administrative judge must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Higgins v. U.S. Postal Service*, 43 M.S.P.R. 66, 68 (1989). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if her comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (*quoting Liteky v. United States*, 510 U.S. 540, 555 (1994)).

In this case, the appellant argues that, during prehearing settlement discussions, the administrative judge stated that she was "leaning" toward finding in favor of OPM. PFR File, Tab 1 at 4-5. However, it is well-settled that an

administrative judge's honest appraisal of an appeal does not constitute extrajudicial conduct and is generally insufficient to establish prejudgment or bias. *See Gensburg v. Department of Veterans Affairs*, 85 M.S.P.R. 198, ¶¶ 6, 8 (2000). Administrative judges are permitted to engage in frank settlement discussions with the parties, and although the appellant might not have liked the administrative judge's assessment of his case, the administrative judge did not exhibit bias by informing him of that assessment. *See Herman v. Department of Justice*, 119 M.S.P.R. 642, ¶ 11 (2013).

## NOTICE OF APPEAL RIGHTS[8]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S.

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.